UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :

    v.    :    Crim No. 1:24-mj-00058-ZMF-1

DAVID MEDINA    :

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO MODIFY PRETRIAL RELEASE CONDITION

Mr. Medina, through undersigned Counsel, submits this reply to the Government's response to his motion to modify his pretrial release condition prohibiting access to all firearms.

REPLY ARGUMENT

The government argues that Mr. Medina must present an "intervening change in circumstances that would merit an alteration of the condition." ECF 18, p. 8. This is not the correct standard. The release statute plainly states that "[t]he judicial officer may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). An intervening change of circumstances is required to reopen a detention hearing. *See* 18 U.S.C. § 3142(f)(2). That is not at issue with this motion.

The government next argues that Mr. Medina fails to identify a particularized need for possessing a firearm other than general "protection." First, Mr. Medina would appreciate the Court's consideration of the fact that he is a single parent and sole caretaker to a 16-year-old daughter, and he believes that dynamic makes his interest in home protection particularized and sincere. Second, even though he feels he has such an interest, a particularized showing is not required. A person's interest in and constitutional right to possess a firearm for home protection is not dependent on the person identifying a particularized or imminent threat. *See District of*

1

*Columbia v. Heller*, 554 U.S. 570, 629 (2008) (recognizing the handgun is the most preferred firearm to keep and use for home protection and finding the Second Amendment protects such interest); *New York State Rifle & Pistol Ass'n., Inc v. Bruen*, 597 U.S.1, 10 (2022). The question is whether Mr. Medina has been found a sufficient danger to the community to warrant the release condition prohibiting firearm access. He asks this Court to find he is not a danger and the complete prohibition on firearm access is not the least restrict condition.

The government focuses on Mr. Medina's conduct on January 6 and private text messages he sent to a friend in the days and weeks before. Regarding January 6 conduct, the government claims "Medina smashed a sign belonging to then-Speaker of the House Nancy Pelosi." The government shows the sign still hung and in one piece in one image, ECF 18 at 2 (Image 1), and then shows a later image where Mr. Medina appears to be throwing something down against the ground followed by an image of another person holding a piece of the sign. *Id*. at 3 (Images 2 and 3). Although the government does not explicitly state that Mr. Medina knocked down and broke the entire sign, they leave the issue open for the court to infer. This inference is unwarranted. The complete sign shown in Image 1 is rectangular and approximately three feet in length. The piece held by Medina in Image 2 is about a third of that size and is an irregular shape. He is throwing down a piece of the already broken sign. Prior counsel for the government has acknowledged other footage in a documentary that shows another individual taking down the sign and clarifies its theory of guilt on the misdemeanor property destruction count is Mr. Medina's "further breaking the sign[.]" Ex. 1 (email between parties). Apart from the broken sign episode, Mr. Medina spent his time in or near the rotunda until the police directed people out. He was seen at one point waving an American flag. Mr. Medina was not involved in the initial breach of the Capitol and did not engage in violence with police. He was not armed or disguised and he was not wearing body armor.

The government also points to private text messages Mr. Medina had with a close friend. Two series of text messages are from around December 1 and December 12, 2020, respectively. The messages are in reference to ongoing BLM riots and pandemic related shutdowns and share concerns of coming martial law and the need to resist. Trump did not announce the January 6 rally until December 19, after this initial series of text messages. Barry, Dan; Frenkel, Sheera (January 6, 2021). ["Be There. Will Be Wild!": Trump All but Circled the Date](). *The New York Times*. A final series of messages are from January 1, 2021, with the same friend, and reference "war time" and the "battle for DC." These messages are hyperbole. The most telling facts supportive of this is that Mr. Medina flew to DC and was not armed with any weapons, he did not disguise himself in any manner, he was not wearing any body armor or a gas mask, and he did not break barriers or skirmish with the police. The government has numerous text messages between Mr. Medina and others he traveled with for January 4, 5, and 6, 2021, while Medina was in DC. None contemplate engaging in violence or storming the Capitol. Further, the government has Mr. Medina's text messages after January 6, 2021, and in those he does not condone the violence and he does not continue on about civil war or any other similar language.

It is relevant and significant that Mr. Medina voluntarily interviewed with the FBI on March 1, 2021. At that time, he was identified by law enforcement and forthcoming about his involvement on January 6. ECF 18, pp. 4-5. The government did not file the complaint in this matter, based upon the same conduct to which he was questioned about on March 1, 2021, until nearly three years later, on February 13, 2024. ECF 1. This is significant because it belies the government's argument that Mr. Medina is a danger to the community. Had Mr. Medina posed a continuing threat, the government surely would have proceeded earlier. Moreover, Mr. Medina

has conducted himself accordingly on pretrial release the past six months. Mr. Medina has demonstrated that he is not a threat to the community.

January 6 was a unique and traumatic day for the country and those who worked at and secured the Capitol and nothing in this request is meant to minimize that. But considering Mr. Medina's individual actions that day, the passage of time since that day, the charges he faces, his compliance on pretrial supervision, and his history of being a law-abiding citizen, the pretrial condition restricting all firearm access is not "the least restrictive condition" that will ensure the safety of the community, and he respectfully asks for the requested modification.

> Respectfully submitted,
>
> FIDEL CASSINO-DUCLOUX
> FEDERAL PUBLIC DEFENDER
>     /s/
> _____
>
> ROBERT HAMILTON
> Assistant Federal Public Defender
> 101 SW Main Street
> Suite 1700
> Portland, OR 97204
> (503) 326-2123 ext. 3579
> Robert_Hamilton@fd.org

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Eric Boylan, DOJ-USAO, attorney of record for the United States, this 6th day of August, 2024.

                                          /s/
                                      Robert Hamilton
                                      Attorney for Defendant